IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 16-cv-02272-PAB

Q. ILI-YAAS H. FARRAKHAN-MUHAMMAD,[1]

    Applicant,

v.

JACK FOX, Complex Warden,

    Respondent.

## ORDER DENYING APPLICATION FOR A WRIT OF HABEAS CORPUS

This matter comes before the Court on the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [Docket No. 9] filed pro se by Applicant, Q. Ili-Yaas H. Farrakhan-Muhammad on October 27, 2016. On December 23, 2016, the Court issued an order, Docket No. 19, directing Respondent to show cause why the Application should not be granted. Respondent filed a Response to Order to Show Cause, Docket No. 25, on January 31, 2017. On February 16, 2017, Applicant filed a Traverse/Reply. Docket No. 27. Having considered the same, the Court will deny the Application and dismiss the action for the reasons discussed below.

---

[1] The Court notes that Mr. Q. Ili-Yaas H. Farrakhan-Muhammad, Inmate Register # 02791-088, is the same person as Christopher Mitchell, Q Ili-Yaas Haakeem Farrakhan-Muhammad, C. Eli-Jah Hakeem Muhammad, Elijah Hakeem Muhammad, and Caliph Ili-Yas Az-Hakeem Muhammad. The Court further notes that Applicant is identified by the Federal Bureau of Prisons as Q Ili-Yaas Haakeem Farrakhan-Muhammad.

**I. BACKGROUND**

Applicant is a federal prisoner in the custody of the Bureau of Prisons ("BOP") currently incarcerated at the United States Penitentiary, Administrative Maximum, in Florence, Colorado. On September 7, 2014, Applicant received an incident report charging him with assault, in violation of Code 224. Docket No. 25-3 at 8; Beicker-Gallegos Decl., Docket No. 25-1, ¶ 9. The incident was described as follows:

> On September 7th, 2014 at approximately 11:57 a.m. I C/O M. Ross was feeding E-Unit upper B range. When we go to I/M Farrakhan, Qili-Yass cell he was observed shaking a bottle. C/O J. Hill felt was unsafe to open the cell door at that time so we continued to feed the range. Upon returning to I/M Farrakhan's cell he no longer appeared to have a bottle. The cell door was cracked in order to feed I/M. When the door was cracked I/M Farrakhan said 'if you set those trays in you know what time it is Ross.' I/M then threw what appeared to be a unknown clear liquid at me, striking me in the lower left hand and upper left shoulder. I sustained no injuries. Operations Lt. was notified and no further incident.

*Id.*

The incident report was referred to the Federal Bureau of Investigation ("FBI") for further investigation. Docket No. 25-3 at 10-11; Beicker-Gallegos Decl., ¶¶ 10-11. The FBI declined criminal prosecution and returned the incident to the BOP for institutional processing. *Id.* On September 13, 2014, Applicant was advised of his rights regarding the disciplinary process and given the opportunity to make a statement. *Id.* at 8-9; Beicker-Gallegos Decl., ¶ 12. Applicant denied the charge and told the investigating officer that "I didn't assault any officer. I didn't have any water in my hand." *Id.* Applicant received a copy of the incident report the same day. *Id.*; Beicker-Gallegos Decl., ¶ 12.

On September 15, 2014, the Unit Disciplinary Committee ("UDC") conducted a

hearing and referred the charge against Applicant to a Discipline Hearing Officer ("DHO") for further hearing. Docket No 25-3 at 8; Beicker-Gallegos Decl., ¶ 14. Applicant received a copy of the Notice of Discipline Hearing and written notice of his rights at the DHO hearing. *Id.* at 12-14; Beicker-Gallegos Decl., ¶ 14. Applicant requested Mr. Thomas as his staff representative and asked to call two staff members as witnesses at the hearing. *Id.* at 13; Beicker-Gallegos, Decl., ¶ 16.

On December 10, 2014, a DHO conducted Applicant's hearing on the incident report. Docket No. 25-3 at 2; Beicker-Gallegos Decl., ¶ 17. At the hearing, Applicant stated he understood his rights and accepted staff representation by Mr. Haywood because Mr. Thomas could not serve as Applicant's staff representative "due to a shift conflict" and Mr. Wacker was not available since he no longer worked at the facility. *Id.* at 5, 25; Beicker-Gallegos Decl., ¶¶ 16-18. Mr. Haywood stated that he had spoken to an inmate "who indicated [Applicant] did not throw anything on the staff," but that he was unable to obtain a statement from two other inmates whom Applicant had requested as witnesses because one "did not want to make a statement" and the other had been "transferred out of this institution." *Id.* at 2; Beicker Gallegos Decl., ¶ 18. Mr. Haywood further stated that he "made efforts" to review video of the incident as requested by Applicant, but "due to the passage of time, video no longer exists." *Id.*

Applicant also submitted the following written statement on his behalf:

1. I/M Farrakhan-Muhammad dispute the description of the incident on Sept. 7th. M. Ross. ADX-C.O. said that he observed I/M Farrakhan-Muhammad shaking a bottle and J. Hill, ADX-C.O., felt it was unsafe to open the cell door. 2. The E04-range surveillance tape can show that the cell door was open to placed foodtrays in sallyport due to I/M Farrakhan-Muhammad being on a hunger strike. 3. The E04-range

3

surveillance tape can also show that the foodtrays was placed outside of his cell after I/M Farrakhan-Muhammad threaten to commit suicide with a bed sheet tied around his neck and a bottle of Hyopocholothiazine pills, the bottle M. Ross, ADX-C.O. observed seeing.  4. I/M Farrakhan-Muhammad disputes the description of the incident on Sept. 7th that M. Ross, ADX-C.O. stating that he was struck on the left hand and shoulder with a unknown clear liquid.  5. The E04-range surveillance tape can show that he placed the foodtrays in the sallyport with his right hand and not with his left hand as he claimed.  6. Why will M. Ross, ADX-C.O. force to put foodtrays in the sallyport knowing that I/M Farrakhan-Muhammad had a sheet around his neck and a bottle of prescription medication in his hand threaten to commit suicide if the foodtrays were to be placed in sallyport. 7. M. Ross, ADX-C.O. and J. Hill, ADX-C.O. were trying to provoke and encourage I/M Farrakhan-Muhammad to commit suicide by placing foodtrays in sallyport and lied to cover-up their ongoing staff misconduct and mistreatment toward I/M Farrakhan-Muhammad by writing bogus incident report to cover-up their abuses. 2: C.F.R. 541.4 Violations: the untimeliness serving of the incident report without out a memo delay violates the 24-hour serving of the written notice in 2: C.F.R. 541.5, and procedural due process as set forth in the Wolff protection. 2: C.F.R. 541.6(F)(1): I/M Farrakhan-Muhammad request again to be examine by the ADX-Psychology Services Department if he were competent at the time of the Sept. 7th incident and if he mentally competent to be seen and heard by the ADX-D.H.O.  2: C.F.R. 541.8(F)(1): I/M Farrakhan-Muhammad request for E04-range surveillance tape to be introduce as exculpatory evidence and viewed by L. Thomas, ADX, L.T. requested staff representative with S. Beicker-Gallegos, ADX-D.H.O. at the DHO hearing. 2:C.F.R. 541(F)(2)(4) Staff witnesses: Mr. Beynum, ADX-C.O., H. Boehm, ADX-Clinical Psychologist, F. Davis, ADX-Clinical Psychologist, Mrs. Moody-ADX Clinical Psychologist. Inmate witnesses: J. Pinson, J. Currence, I. Harris, Jr. 28 C.F.R.  541(d).  Staff Representative L. Thomas, ADX-Lieutenant.  Conclusion.  For the forgoing reason above I/M Farrakhan-Muhammad request that the ADX-D.H.O. totally expunge of any reference to incident report #2626183 from his chronological disciplinary record due to no reliable evidence and insufficient evidence to support any finding that I/M Farrakhan-Muhammad committed BOP-prohibited act Code #224.

Docket No. 25-3 at 3; Beicker-Gallegos Decl., ¶ 19.

In her written report, the DHO noted that, while Applicant requested four staff

4

members as witnesses, these individuals were not called during the hearing because their testimony was "irrelevant" since they were not present during the incident on September 7, 2014. Docket No. 25-3 at 3; Beicker-Gallegos Decl., ¶ 19. Applicant's request for three inmate witnesses also was denied for security reasons and the unavailability of one inmate who had been transferred out of the facility. *Id.* at 3-4.

The DHO also noted that, although video footage of the incident had not been preserved, Mr. Thomas had reviewed the video and provided a statement indicating that he was unable to see inside the sallyport of Applicant's cell and did not witness any substance being thrown out of the sallyport. Docket No. 25-3 at 6, 23. The DHO found that Mr. Thomas' description of the events occurring on-camera was "consistent with the events described by both staff members" who had witnessed and reported the incident. *Id.* at 6.

The DHO further determined that any delay in processing Applicant's incident report was because of its referral to the FBI and such delay did not hamper Applicant's ability to prepare a defense. Docket No. 25-3 at 6. Lastly, the DHO noted that Psychology Services staff had concluded that Applicant was "competent and responsible for [his] actions." *Id.*

At the conclusion of the hearing, the DHO found, based upon the greater weight of the evidence, Applicant was guilty of the prohibited act of assault without serious injury (Code 224) for throwing an unknown, clear liquid substance on prison staff. Docket No. 25-3 at 6; Beicker-Gallegos Decl., ¶ 20. Applicant was sanctioned with 27 days loss of good conduct time, 30 days of disciplinary segregation to be suspended

pending 90 days of clear conduct, and 90 days loss of commissary, visiting, and telephone privileges. *Id.* at 6-7; Beicker-Gallegos Decl., ¶ 21. Applicant received a copy of the DHO's written findings and conclusions on January 30, 2015. *Id.* at 7; Beicker-Gallegos Decl., ¶ 22.

On October 27, 2016, Applicant filed the § 2241 Application in this action. Based on an alleged deprivation of his due process rights in the disciplinary process, he asserts the following five claims:

> (1) the DHO did not consider his "mental condition" or "mental state" at the time of the incident in violation of 28 C.F.R. 541.6;
>
> (2) his staff representative was inept by "refusing to seek a inmate witness statement" in violation of 28 C.F.R. 541.8(d);
>
> (3) "the spoliation of the timely requested surveillance videotape footage as exculpatory evidence" was prejudicial in violation of 28 C.F.R. 541.8(f);
>
> (4) the DHO was biased against him in violation of 28 C.F.R. 541.8(b); and
>
> (5) there was insufficient evidence to support his disciplinary conviction.

Docket No. 9 at 2-8. For relief, Applicant requests that his disciplinary conviction and loss of good-conduct time "be set aside." *Id.* at 9.

Respondent counters in the Response that there is some evidence in the record to support the DHO finding that Applicant was guilty of assault without serious injury. Docket No. 25 at 5. Respondent further contends that Applicant's "mental state" was considered because he had been evaluated and determined competent by a staff psychologist. *Id.* Respondent also concludes that, "although video during the incident was unavailable, an officer who observed the video provided evidence that the footage

did not provide a view of Applicant's sallyport, where the food tray was placed and liquid thrown." *Id.*

In the Reply, Applicant "denies" the assertions in the Response and argues that he was "not afforded the protective regulatory rights" concerning a mental health examination to determine competency in connection with his disciplinary proceedings. Docket No. 27 at 1-2. He further claims that his staff representative "refused to provide him effective assistance in his defense; that the "surveillance video footage would have supported his defense"; that the DHO was biased and predisposed toward a finding of guilt; and that "there was relevant evidence in the disciplinary record that there were insufficient evidence for any rational fact-finder to find the pro se Applicant had the intent to attempt to violate prohibited Act Code #224A due to a greater weight of the evidence." *Id.* at 2-3.

## II. LEGAL STANDARDS

### A. § 2241 Actions

The writ of habeas corpus is available if a prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A habeas proceeding is "an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)). A § 2241 application must be filed in the district where the prisoner is confined. *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996). Prison disciplinary proceedings that result in the deprivation of good-time

credits may be challenged in a § 2241 proceeding. *McIntosh*, 115 F.3d at 811-12.

## B. Pro Se Litigant

Applicant is proceeding pro se. The Court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). However, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The Court may not assume that Applicant can prove facts that have not been alleged, or that Respondent has violated laws in ways that Applicant has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). Pro se status does not entitle the litigant to an application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

## C. Due Process

"[I]t is well settled that an inmate's liberty interest in his earned good time credits cannot be denied without the minimal safeguards afforded by the Due Process Clause of the Fourteenth Amendment." *Mitchell v. Maynard*, 80 F.3d 1433, 1444 (10th Cir. 1996) (internal quotation marks omitted); *see also Howard v. U.S. Bureau of Prisons*, 487 F.3d 808, 811 (10th Cir. 2007) (citing *Mitchell* in the context of a federal prisoner challenging a prison disciplinary conviction). However, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556

(1974).

> Where a prison disciplinary hearing may result in the loss of good time credits, . . . the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

*Superintendent, Mass. Corr. Inst. Walpole v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff*, 418 U.S. at 563-67). In addition, "revocation of good time does not comport with the minimum requirements of procedural due process, unless the findings of the prison disciplinary board are supported by some evidence in the record." *Id.* at 565 (internal citation and quotation marks omitted). Review under the some evidence standard "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Howard*, 487 F.3d at 812 (quoting *Hill*, 472 U.S. at 455). "A disciplinary board's decision can be upheld . . . even if the evidence supporting the decision is meager. *Id.* (internal quotation marks omitted). Finally, the decisionmaker also must be impartial. *See Gwinn v. Awmiller*, 354 F.3d 1211, 1219 (10th Cir. 2004) (citing *Wolff*, 418 U.S. at 592) (Marshall, J., concurring) (stating that "an impartial decisionmaker is a fundamental requirement of due process" that is "fully applicable" to disciplinary hearings for prisoners).

### III. ANALYSIS

#### A. <u>Mental Health Examination</u>

Applicant asserts in claim one that his mental condition or state was "at issue," but was not considered by the DHO in violation of BOP regulation, 28 C.F.R. § 541.6. Docket No. 9 at 5. Respondent alleges Applicant was seen by a mental health clinician

9

that diagnosed Applicant with a characterological disorder, which did not render him incompetent or not responsible for his actions. See Docket No. 25 at 2, n.1; Docket No. 25-3 at 26.

The BOP regulation that Applicant relies on provides as follows:

> If it appears you are mentally ill at any stage of the discipline process, you will be examined by mental health staff.
>
> (a) Competency to Participate in Disciplinary Proceedings. If evidence indicates that you cannot understand the nature of the disciplinary proceedings, or cannot help in your own defense, disciplinary proceedings may be postponed until you are competent to participate. The Unit Disciplinary Committee or Discipline Hearing Officer will make this decision based on evidence, including evidence presented by mental health staff.
>
> (b) Responsibility for Conduct. You will not be disciplined for conduct committed when, as the result of a severe mental disease or defect, you were unable to appreciate the nature and quality, or wrongfulness of the act. The UDC or DHO will make this decision based on evidence, including evidence presented by mental health staff.

28 C.F.R. § 541.6.

Upon review of the record, the Court finds that F. Davis, Psy.D. authored an "IDC/UDC Mental Health Evaluation" concerning Applicant's competency to understand the nature of the disciplinary proceedings and to assist in his defense and his responsibility for his conduct at the time of the incident on September 7, 2014. Docket No. 25-3 at 35; Beicker-Gallegos Decl., ¶ 15. In the psychological findings section, Dr. Davis wrote as follows:

> Mr. Farrakhan does not have a mental health diagnosis that would render him unable to aid in his own defense during the disciplinary process. He is aware of the charges against him. He has been involved in the disciplinary process in the past. He appears to have good understanding of the process and his rights as evidenced by the inmate requesting a

> psychological evaluation and making a true attempt at having the incident report dismissed. There have been no indications of a break in reality during the noted timeframe.
>
> . . . .
>
> Mr. Farrakhan is diagnosed with Borderline Personality Disorder and Mood Disorder in Condition Classified Elsewhere by Health Services. Borderline Personality Disorder is a characterological disorder and does not render one unable to understand and appreciate the nature, quality or wrongfulness of his acts at the time of the incident. Mood Disorder in Condition Classified Elsewhere is a disorder indicating mood concerns and mood lability. Though possibly problematic, it also does not render one unable to understand and appreciate the nature, quality, or wrongfulness of his acts at the time of the incident without a break from reality noted. The other provisional diagnoses discussed above also do not render one unable to understand and appreciate the nature, quality or wrongfulness of his acts at the time of the incident. As no break from reality is noted, inmate should be deemed responsible.

*Id.*

In her written report, the DHO noted that she "considered the IDC/UDC Mental Health Evaluation from F. Davis, Psy.D., which indicates you are competent and responsible for your actions." Docket No. 25-3 at 5. In conclusion, she reiterated that, "[i]n relation to your request for a psychological evaluation, the DHO reminds you, as noted above, that according to Psychological Services staff you have been determined to be competent and responsible for your actions." *Id.* at 6.

In the Reply, Applicant claims that he was denied the right to an "in-person examination with his therapist to determine at the time responsible for his conduct and competent to participate at the December 9, 2014 disciplinary proceedings." Docket No. 27 at 1. He further contends that the "written IDC/UDC Mental Health Evaluation documentation does not satisfy 28 C.F.R. 541.6(a) or procedural due process

11

protections." *Id.* This argument is without merit.

"Prison regulations are primarily designed to guide correctional officials in the administration of a prison. [They are] not designed to confer rights on inmates." *Sandin v. Conner,* 515 U.S. 472, 481-82 (1995)*; see also Diaz v. McGuire*, 154 F. App'x 81, 84-85 (10th Cir. 2005) (unpublished) (stating that prison regulations are not designed to confer rights on inmates, and the process which is due is measured by the due process clause). Thus, "a failure to adhere to administrative regulations does not equate to a constitutional violation." *Hovater v. Robinson,* 1 F.3d 1063, 1068 n.4 (10th Cir. 1993) (*citing Davis v. Scherer,* 468 U.S. 183, 194 (1984)). The Court's review of Applicant's disciplinary proceeding is "limited to whether the three steps mandated by *Wolff* were followed and whether there was some evidence to support the disciplinary committee's findings." *Mitchell*, 80 F.3d at 1445. As such, even if prison officials deviated from BOP regulations in the administration of Applicant's mental health evaluation, the Court cannot conclude that he was denied due process based solely on the failure to follow particular federal regulations and directives.

Moreover, even if the BOP regulation, 28 C.F.R. § 541.6, was considered a minimum due process requirement, it was not violated in Applicant's case. The Code of Federal Regulations delegates to the UDC and DHO the determination of whether an inmate involved in disciplinary proceedings is competent to participate and responsible for his conduct. *See* 28 C.F.R. § 541.6(a), (b). The competency and responsibility findings are to be made "based on evidence, including evidence presented by mental health staff." *Id.*

Here, the DHO highlighted in her written decision that Dr. Davis had conducted a psychological evaluation in response to Applicant's request for a mental health examination in connection with the September 7, 2014 incident and disciplinary proceedings. Docket No. 25-3 at 6, 26; Beicker-Gallegos Decl., ¶¶ 14-15. Dr. Davis provided the DHO with an IDC/UDC Mental Health Evaluation stating that Applicant was competent to participate in the disciplinary process and responsible for his conduct at the time of incident. *Id.* at 35. The DHO's finding of competency and responsibility, which is based on Dr. Davis' evaluation and clinical opinion of Applicant, is conclusive in this matter. In other words, to the extent 28 C.F.R. § 541.6 establishes a due process right to a mental health examination during disciplinary proceedings, based on the above findings, the requirement was satisfied during Applicant's discipline process. Applicant's first claim, therefore, lacks merit and will be denied.

**B. Staff Representative**

In claim two, Applicant states that his staff representative was inept by "refusing to seek a inmate witness statement" in violation of BOP regulation, 28 C.F.R. § 541.8(d). Construing the allegations liberally, Applicant appears to argue that his ability to prepare a defense at the DHO hearing was impaired by his staff representative.

A prisoner does not have a general constitutional due process right to have a staff representative assist him during the disciplinary process. *Wolff*, 418 U.S. at 570; *see also Smith v. Maschner*, 899 F.2d 940, 946 (10th Cir. 1990) (holding that prisoner was not constitutionally entitled to counsel at prison disciplinary hearing). Rather, due

13

process requires the aid of a staff representative only "[w]here an illiterate inmate is involved" or "the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case." *Wolff*, 418 U.S. at 570. *See also Jordan v. Wiley,* 411 F. App'x 201, 209 (10th Cir. 2011) (unpublished) (holding that inmate had no viable due process claim about quality of assistance he received from staff representative where inmate was not illiterate and issues were not so complex that he was unable to collect and present evidence necessary for adequate comprehension of his case); *Duarte v. Turner*, 1995 WL 57187 at *3 (7th Cir. 1995) (unpublished) (rejecting habeas claim that staff representative was ineffective for failing to discover evidence).

Here, there is no indication that the issues were complex or that Applicant was illiterate. Further, the record demonstrates that Applicant requested and was provided with a staff representative to assist him, and that the staff representative obtained statements from requested witnesses and appeared at the DHO hearing. *See* Docket No. 25-3 at 2-6; Beicker-Gallegos Decl., ¶¶ 16, 18. Applicant has failed to demonstrate a deprivation of his due process rights regarding the quality of assistance he received from the staff representative in conjunction with his prison disciplinary proceedings. As such, Applicant is not entitled to federal habeas relief on claim two.

### C. Exculpatory Evidence

Applicant next claims that he was denied the opportunity to present exculpatory evidence because of "the spoliation of the timely requested surveillance videotape footage" in violation of BOP regulation, 28 C.F.R. 541.8(f).

14

In *Howard v. U.S. Bureau of Prisons*, the Tenth Circuit determined that an inmate's due process rights were violated where the DHO refused the inmate's request that he review a videotape of the incident before imposing disciplinary sanctions; there was no suggestion that producing the videotape would be unduly hazardous to institutional safety or correctional goals; and it was not clear that the refusal to review the videotape was harmless. 487 F.3d at 814-15. The Tenth Circuit concluded that "[t]he DHO's unjustifiable refusal to produce and review [the videotape that recorded the incident] deprived Mr. Howard of the process due him." *Id.* at 814.

This case is factually distinguishable from *Howard*, where prison officials denied the inmate's request for staff to review the videotaped records of the incident, and, therefore, evidence of the contents of the video was not presented at the DHO hearing. *See Howard*, 487 F.3d at 810-11, 813-14. By contrast, in Applicant's disciplinary proceeding, a prison official did review video footage that recorded the incident and summarized its contents in a written statement that was considered by the DHO. *See* Docket No. 25-3 at 5-6, 22-23. As such, there was not a complete failure to "produce and review" the video footage, which would trigger a due process violation under *Howard*. *See, e.g.*, *Pinson v. Daniels,* Case No. 12-cv-03006-RM, 2014 WL 984907, at *9 (D. Colo. Mar. 13, 2014) (unpublished) (distinguishing petitioner's claim from *Howard* because "the videotape was produced, the investigating officer reviewed the tape, and he provided a statement regarding the details of what he saw for consideration by the DHO").

In another case, a prisoner claimed that his due process rights were violated when he was convicted of a disciplinary offense based on a BOP staff member's summary of the videotaped footage of the incident because the DHO denied the prisoner's request to review the videotape and play it at the disciplinary hearing. *Deberry v. Berkebile*, No. 13-cv-01926-RBJ, 2014 WL 1100184, at *2-3 (D. Colo. Mar. 17, 2014) (unpublished). In *Deberry,* District Judge R. Brooke Jackson granted habeas relief concluding that the refusal to allow the petitioner to review the video footage was in error, where the respondent conceded that there was no undue hazard to institutional safety or correctional goals in permitting the petitioner to view the particular footage at issue, and the respondent could not demonstrate that the constitutional error was not harmless. *Id.* at *3.

Unlike the circumstances in *Deberry*, the record demonstrates that any error resulting from "spoliation" of the video footage of the incident prior to Applicant's disciplinary hearing was harmless. After the DHO was advised that video of the September 7, 2014 incident had not been preserved, the DHO contacted Mr. Thomas because Applicant alleged that Mr. Thomas had previously reviewed video footage from the incident. Docket No. 25-3 at 22-24, 27. Mr. Thomas initially responded that he had watched the video, but that it did not provide a view into Applicant's sallyport. *Id.* at 23. The DHO requested additional information about what was captured by the video recording, and Mr. Thomas provided the following written statement:

> Maam, I saw staff feeding the range as normal. I did not see anything out of the order. The Officer fed one door at a time. They went past his cell at

first then came back to it. When they fed his cell, Officer Ross placed the
food trays in his sallyport. I did not see anything come out of his sallyport.

*Id.* at 22.

The DHO determined that the video footage did not provide exculpatory evidence in Applicant's defense because it did not have a view into Applicant's sallyport and the statement made by Mr. Thomas was "consistent with those made by both reporting staff members." Docket No. 25-3 at 6. As such, the video was reviewed and the content of the video was presented and considered during the disciplinary hearing. The Court concludes that any failure to preserve the video footage for viewing during Applicant's hearing was harmless because it would not have affected the outcome of the DHO's decision. Accordingly, Applicant cannot prevail on claim three.

### D. Impartial Decision-Maker

Next, Applicant contends he was denied due process because the DHO was biased against him in violation of BOP regulation, 28 C.F.R. § 541.8(b).

"An impartial decisionmaker is a fundamental requirement of due process that is fully applicable in the prison context." *Gwinn*, 354 F.3d at 1220 (internal quotations omitted). However, "honesty and integrity are presumed on the part of a tribunal." *Id*. Therefore, "there must be some substantial countervailing reason to conclude that a decisionmaker is actually biased with respect to factual issues being adjudicated." *Id*. "Due process is violated only when the risk of unfairness is intolerably high under the circumstances of a particular case." *Id*. (internal quotations omitted).

Applicant's conclusory allegation that the DHO had a predisposition toward a finding of guilt is insufficient to demonstrate a denial of due process. Further, there is

nothing in the record to suggest that the DHO was involved "in the investigation or prosecution of the particular case, or . . . had any other form of personal involvement in the case." *Wolff*, 418 U.S. at 592 (Marshall, J., concurring) (describing the minimum requirements of due process in a disqualification claim). Even if a DHO once before concluded that an inmate was guilty of the charged offense, this fact does not, without more, demonstrate a high risk of unfairness. *See, e.g. Brown v. Rios*, 196 F. App'x 681, 684 (10th Cir. 2006) (unpublished) (concluding that habeas petitioner's claim that DHO was biased because petitioner had previously named the DHO as a defendant in a separate civil lawsuit, did not, without more, rise to a constitutional violation).

Consequently, Applicant has failed to demonstrate with specific factual allegations that the DHO was biased against him in violation of his due process rights. Applicant, therefore, is not entitled to relief with respect to claim four.

### E. <u>Sufficiency of the Evidence</u>

Applicant finally maintains that there was insufficient evidence to support his disciplinary conviction in violation of due process.

In the written report, the DHO provided a detailed overview of the evidence she relied on in finding that Applicant "committed the prohibited act of Assault Without Serious Injury, Code 224, based on your actions of throwing an unknown, clear liquid on the reporting staff member." Docket No. 25-3 at 5; Beicker-Gallegos Decl., ¶ 20. Specifically, the DHO cited the following evidence:

- the incident report;
- supporting memoranda and written statements from other prison staff members who witnessed the incident either in-person or on-camera;

18

- Applicant's mental health evaluation;

- Applicant's verbal and written statements; and

- information provided by Applicant's staff representative, including an inmate witness statement that Applicant did not throw anything on prison staff.

*Id.* at 5-6.

"Ascertaining whether the [some evidence] standard is satisfied does not require examination of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill,* 472 U.S. at 455-56. A disciplinary board's decision can be upheld by a reviewing court "even if the evidence supporting the decision is 'meager.'" *Mitchell*, 80 F.3d at 1445 (quoting *Hill*, 472 U.S. at 457).

The record shows that the DHO relied upon the incident report, memoranda from two staff members who witnessed the incident, and written statements by a staff member who reviewed video of the incident; all of which constitute evidence supporting her decision. *See* Docket No. 25-3 at 5-6, 19-23; Beicker-Gallegos Decl., ¶ 20. Further, Applicant did not present any exculpatory evidence to refute the DHO's finding that he was guilty of the charged offense. The DHO's determination that the reporting staff members were more credible than Applicant and another inmate witness is not reviewable by the federal habeas court. *See Hill*, 472 U.S. at 455-56.

The Court concludes that statements in the incident report and other memoranda submitted constitute "some evidence" sufficient to support the disciplinary conviction of assault without serious injury. *See e.g., Ruelas v. Zuercher*, 240 F. App'x 796, 797

19

(10th Cir. 2007) (unpublished) (holding that an incident report alone constitutes "some evidence" of the inmate's guilt).  Accordingly, Applicant cannot prevail on his due process claim challenging the sufficiency of the evidence, and claim five will be denied.

## IV. ORDERS

For the reasons discussed above, it is

**ORDERED** that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [Docket No. 9] is DENIED and this case is DISMISSED with prejudice.  It is further

**ORDERED** that leave to proceed *in forma pauperis* on appeal is denied.  The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status will be denied for the purpose of appeal.  See *Coppedge v. United States*, 369 U.S. 438 (1962).  If Applicant files a notice of appeal he also must pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

DATED January 31, 2018.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge